## FIRE INSURANCE—AGENCY—ESTOPPEL—WAIVER.

[Wood (6th) Circuit Court, April Term, April 25, 1903.]

### IDA STACY V. NORWICH UNION FIRE INSURANCE SOCIETY.

Parker, Haynes and Hull, JJ.

1. CONFLICTING TESTIMONY OF WITNESS SHOULD BE SUBMITTED TO JURY, WHEN.

    Where the testimony of a witness is conflicting, especially where the witness is hostile, if some part of his testimony tends to support plaintiff's claim, it raises a question that should be submitted to a jury.

2. DENIAL OF LIABILITY BY INSURANCE COMPANY WAIVER OF WRITTEN NOTICE.

    A denial by an insurance company of any liability upon a policy is a waiver of the requirement of written notice of and proof of loss, if made within the time when such notice and proof are required by the policy to be made.

3. FOREIGN INSURANCE COMPANY ESTOPPED TO DENY AGENT'S AUTHORITY, WHEN.

    Where a foreign insurance company puts in the hands of an agent policies of insurance, signed and countersigned and ready for execution and delivery except filling in the name of the party and the uescription of -the property, and gives no notice that there is any other agent in this country, and the loss occurs before the policy is delivered and the insured has not seen the policy and knows of no other agent, the company is estopped to deny his authority to represent it in all matters necessary to the making of a contract of insurance and pertaining to the settlement of a loss, and such local agent may waive notice and proof of loss by notice to the insured that the company denies all liability upon the policy.

ERROR to court of common pleas of Wood county.

Baldwin & Harrington, for plaintiff in error.

James O. Troup, for defendant in error.

### HULL, J. (Orally.)

The parties in this case stand in this court the same as in the court below, the plaintiff in error having been the plaintiff below. The action was brought on a fire insurance policy to recover $572.30 for the loss by fire of a building which was insured by the defendant in error. The court below directed a verdict in favor of the defendant at the close of plaintiff's evidence upon the ground that no written notice of the loss had been given to the company as required by the policy, and no formal written proofs of loss made to the company, as required, and that there was no evidence tending to show that the company had waived these requirements. Proceedings in error were commenced in this court to reverse that judgment.

The policy was introduced in evidence upon cross-examination of a witness called by the plaintiff. It contains a condition requiring immediate written notice of the loss to be given to the company and formal written proofs of loss to be made to the company within sixty days after the date of the loss. It is not claimed that any written notice was given to the company or that any written proofs of loss were made; the case turns on the question as to whether these requirements were waived by the company. It is claimed that the company, through its agent, denied any liability on the policy; denied, generally, any liability upon the policy after the fire, and within sixty days, not basing its denial and refusal to pay upon the failure to give notice and present written proof of loss. The law is well settled that if this were true, that such a denial of liability were made, that would amount to a waiver of the requirement of written notice or proof of loss, if the denial was made within such time as the proof of loss is required to be made; the authorities are all one way on that question. It would be idle to make proof of loss after the company had notified the assured that it would not pay; and it is claimed here that the company did deny liability, and that, therefore, this requirement was waived. The plaintiff claims that this denial of liability was communicated to him by the agent of the company in Bowling Green, one E. A. Barton, he being the agent of the company and representing it there. The head office of the company and its headquarters are in Norwich, England. The evidence of the plaintiff tends to show that shortly after the fire, Barton told him that the company denied all liability on the policy, and in substance, that it would not pay. This, Barton, who was called by the plaintiff, denied, but the evidence of the plaintiff is in the record.

It is contended by the defendant in error that an agent such as Barton was, had no authority to make such a declaration on behalf of the company; that his authority is limited to the issuing of a policy, the insuring of the property, collecting the premiums and giving notice of his acts in that respect to the company, but that after a loss occurs his authority is terminated and ceases, and that the matters that follow then are in the hands of, and under the authority of, other persons and other agents, and therefore it is claimed that a denial of liability made by the agent would not bind the company, and would not amount to a waiver of notice and proofs of loss.

The circumstances of the insurance and the fire and what occurred, as far as the contract is concerned, may be briefly stated. The insured acted entirely through her husband as her agent; he made application to Mr. Barton to insure the property, and according to his testimony, Mr. Barton assured him he would endeavor to place the property in some of

the companies he was representing, and stated to him that he represented the Norwich Union Company and others, and thought he could place it in the Norwich company, and Stacy requested him to do so if he could. After that, this policy was written by Mr. Barton. He had in his possession policies signed by the proper officers of the company, and it was only necessary for him to fill them in and countersign them. The policy was not delivered to Stacy. Stacy testified he was not certain what company Barton would insure the property in, but when the policy was written, it was to be turned over to him. The policy was written under date of February 9, 1901, and while it was still in the office of Mr. Barton, not having been delivered, on the evening of February 15, 1901, he (Barton) received a telegram from an authorized agent of the company at New York, signed "The Norwich-Union Fire Insurance Society," to cancel the policy, the company reserving the right to cancel any policy issued by its agent upon his notifying them of the risk he has taken, though he has authority to issue the policy, and the company would be bound by it until it was in fact cancelled, and under the statute of this state it would continue in force five days after notice of cancellation was given to the insured. Barton received this notice about five o'clock in the afternoon of February 15—some six days after the policy was written. He gave no notice to Mr. Stacy of the cancellation, and that night, about midnight, the property was destroyed. Barton saw Mr. Stacy the next day and notified him that the company had cancelled the policy and he had sent it to the company. The policy was never delivered to Mr. Stacy and he never saw it, or any part of it, and had no actual notice, until after the loss, of its contents or any of the conditions, restrictions or requirements contained therein. Barton told Stacy that he would notify the company of the loss. He had already sent in the policy and it was not necessary to telegraph the company, as the loss was a total one. Barton first talked with Stacy by telephone the morning after the fire, and asked, if there was some one he could interrogate in regard to the loss, and Stacy recommended him to some reputable citizens in the village, and Barton did investigate the loss to some extent before he saw Stacy.

A few days or a week after that, Stacy called on Barton again and, according to Stacy's testimony, Barton told him he was afraid there was going to be trouble; that the company denied all liability on the policy, and some few times after that Stacy saw Barton in regard to the matter, and nothing was ever paid upon the policy. Barton testified he had some communication with Mr. Sowards, the general agent, or general adjuster of the company at Cincinnati; he was unable to tell just when this was; but he said that Sowards had written him a letter or told him that

the company would not pay; he said this was three or four weeks after the loss, and afterwards he said it might be by letter, and in some place in his testimony he said it was sixty days after, and finally it was shown that Barton was unable to state when Sowards had made this statement to him that the company would not pay. After the sixty days had expired, within which time proofs of loss might be made, Barton received a letter from Sowards in which he said "No proof of loss having been received within the time allowed, there will, of course, be no possibility of our paying the loss unless it proves that you have, by your communications with Mr. Stacy or Mr. Sutton, so involved us as to make yourself liable to us for any claim which can be successfully prosecuted."

The weight of authority, generally, seems to be that a local agent, with power to solicit insurance, collect premiums and issue policies, under a policy containing such restrictions and conditions as this one, has not the power to waive proof of loss unless the company has conferred upon the agent additional authority after the loss or has apparently conferred such authority upon him theretofore. I say the weight of authorities seems to sustain the proposition that, in the absence of anything of this kind, the local agent has no authority to waive such requirements. I will not undertake to review the authorities that were cited by counsel; there are many of them that sustain that proposition. There is no case directly in point in this state that is decisive on this very question. The tendency of the Supreme Court of this state has been to hold, perhaps, rather liberally to the doctrine that the agent who has power to issue policies as Barton had, has authority to represent the company. In the case of Newark Machine Co. v. Insurance Co. 50 Ohio St. 549 [35 N. E. Rep. 1060; 22 L. R. A. 768], Judge Williams, in discussing the question of a local fire insurance agent, held that such an agent was a general agent of the company. The real question in that case, however, was whether the agent had power to extend time of payment and receive payment for insurance other than cash; so the language of Judge Williams must probably be regarded as *dictum*, as urged by counsel rather than an expression of the Supreme Court that such an agent is a general agent of the company with power to bind it in all matters after the loss, as well as before. In the fourth paragraph of the syllabus the Supreme Court say:

"An agent authorized to make contracts of fire insurance and issue policies, may waive payment in cash of the premiums, and give time for their payment, unless there are restrictions upon his authority of which the insured had notice; and such waiver may be express or implied."

On page 558 of the opinion delivered by Judge Williams this is stated:

Stacy v. Norwich Union Fire Ins. Society.

"The only other ground upon which it is claimed the defendant is not liable is, that the premium was not paid until after the loss occurred. Murphy was the duly commissioned agent of the defendant, authorized to make contracts of insurance, collect premiums, and issue and renew policies; and, to that end, was furnished by the defendant with printed forms of policies, signed in blank by the president and secretary of the company, to enable him, without conference with them, to countersign and issue the policies in behalf of the company. It is well settled that such an agent is the general agent of the company, and may, in his dealings with those he insures, waive payment in cash, of premiums, and, indeed, any of the conditions of the policy, except when a restriction upon his authority is in some way brought to the knowledge of the insured."

Although this may be *dictum,* it is sound doctrine, in my judgment, and good law. This statement of Judge Williams would go to the extent of holding that such an agent was the general agent of the company in any matter relating to the policy unless there was an express restriction upon his authority in that respect, brought to the knowledge of the insured. If it was contained in the policy, the insured would, of course, be bound to know it if he had an opportunity to see it. The restriction in this policy was in these words:

"And no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer or agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto."

It is, of course, true, that the company may confer any authority in the transaction of its business upon any agent that it has, whether a local or general agent, and if it does confer such authority upon the agent, expressly or impliedly, the conduct of the agent would bind the company. I say this authority may be conferred expressly or by implication. If the company treats its agent in such a way after a fire as to hold him out as a person authorized to represent the company in all matters and things coming after the fire, it would not be permitted to say that he had authority to represent the company in some respects in regard to those matters occurring after the fire or necessary to be attended to after a fire, and did not have authority to represent it in other respects. It cannot be permitted for the company to confer authority upon its agent to represent it in certain things in regard to the loss after the fire, but, without notice to that effect, to claim he had no authority as to receiving notice or proofs

of loss. It is a general principle, that where business is intrusted to an agent by the principal to be performed, that in the absence of any notice to the contrary, he has implied authority to carry on the business to its completion and do all things necessary for the purpose. In this case, the agent represented the company, and was permitted to represent the company in a manner inconsistent with the claim that he had no authority to do so after the fire in the matter of the loss. That was a fact tending to show that he had authority to represent the company in the matter of receiving notice or proof of loss, or in the matter of denying liability on the part of the company. It should not be lost sight of that, according to this record, at the time this party was insured, and at the time this fire occurred, or at any time before the case was tried, plaintiff had no notice or knowledge of any agent of this company in the United States except Mr. Barton. Stacy had never seen the policy; the company had its headquarters on the other side of the Atlantic, in Norwich, England, and when this loss occurred there was no one that Stacy knew that he could go to, except the agent from whom he had procured this policy, and he went to him, and the agent made the statement to him that he would give notice of the loss to the company, and he did proceed to give notice of the loss to the company. The agent asked Stacy whom he could inquire of in regard to the loss, and he gave him the name of a Mr. Watts. Barton communicated with Watts and ascertained the facts— ascertained that the loss was total. Barton wrote to the company, and it wrote to him through Mr. Sowards, its agent, who was inclined to censure him, and the whole matter in relation to this loss was left by the company, so far as having anyone in charge on the ground, to Mr. Barton.

It seems to us that there is evidence in the record tending to show that the company permitted Mr. Barton to represent them in this matter after the loss occurred, and if this were true, we think then he would have authority to do those things that it is claimed he did do, so as to bind the company in the way of waiving notice of loss and proofs of loss; and upon this proposition may be cited the case of Citizens Ins. Co. v. Stoddard, 64 N. E. Rep. 355 [197 Ill. 330], a decision of the supreme court of Illinois. The court say in the syllabus:

"In an action on a fire policy it was shown that an alleged agent of the company had received the application and delivered the policy, and that, when he received notice of the losses and forwarded it to the insurer, the latter acknowledged its receipt to him, and asked him to investigate the case, but to do nothing by way of an adjustment.

Subsequently, not hearing from the adjuster, the insured called on the agent, and he wrote to the insurer, which replied again, asking that he

look into the loss. Held, that the evidence showed that the alleged agent was the agent of the insurer in the matter of the loss, so that conduct on his part inconsistent with the provision of the policy as to proofs of loss, would be binding on the insurer."

The only defense in this case was that proofs of loss had not been made within thirty days, but had been made in sixty days, the agent having told the insured that sixty days would be soon enough. The court held that in view of the conduct of the agent and what he did for the company after the fire, that he so far represented the company that they could not deny his authority to make this statement; the court say further, at the end, of the opinion, that it is unnecessary that such a waiver be written upon the policy. They say:

"The policy provided, in substance, that no officer, agent or other representative of the company should have power to waive any of the conditions or provisions of the policy, except such waiver should be in writing indorsed upon or attached to the policy. There is nothing in this stipulation which takes it out of the general rule that the provision in a policy of insurance that no waiver shall arise, except out of an agreement endorsed in writing, has reference only to the conditions entering into and forming a part of the contract of insurance, and has no application to those conditions which are to be performed after a loss has occurred."

The court cites Firemen's Fund Ins. Co. v. Refrigerating Co. 162 Ill. 322 [44 N. E. Rep. 746] and 16 Am. & Eng. Enc. Law (2 ed.) 952.

We are of the opinion in this case that there was evidence tending to show that the agent, Barton, represented the company and was authorized to do so in these matters after the loss, and that upon that feature of the case, it should have been submitted to the jury. If the company permitted him to represent it in the matter after the loss and gave him apparent authority to represent it, the company was estopped from denying that he did not have authority to waive proofs of loss, the furnishing of which is one of the steps provided by the policy in collecting the insurance.

If he was given this authority; if he knew the loss was total, as he says he did, if he investigated it and had authority to do so, and found that there were no suspicious circumstances in connection with the fire, he might waive proofs of loss, and if he was given authority by the company to represent them after the loss in matters pertaining to it, if he said to the insured that the company denied all liability, and the insured relied upon that and made no proof of loss and gave no written notice, the company would be estopped from claiming that he had no authority to make such statement. This company, like all others, acts, and must act

through agents, and it can make no statement except through an agent. This insured, when his property was destroyed, must find a representative of the company somewhere. The policy provided that he must make and give an immediate written notice of the loss to the company; that did not mean that he should sit down and write a letter and send it to Norwich, England. If he had done that, it would have been held, perhaps, to be a violation of the terms of the policy, because there was an agent on the ground and it was required of him to give immediate notice to the company. He knew of no agent except this one; he knew of no other officer of this company, so far as the testimony shows, except the agent here in Bowling Green.

We think, further, that there is evidence in this record tending to show that the company did, in fact, deny its liability. The weight of that testimony was for the jury. Mr. Barton testified in some part of the record that Sowards notified him within three or four weeks after the loss that the company would not pay, Sowards being the general adjuster. In other places, Barton says this was later; his testimony is contradictory; but where the testimony of a witness is conflicting, especially where the witness is hostile, if there is some part of his testimony tending to support plaintiff's claim, it raises a question that the plaintiff has a right to have submitted to the jury. The fact that before this policy was delivered, before the fire occurred, it was cancelled by the company, so far as they could cancel it, was a circumstance that would be proper to be considered upon the question whether the company denied liability. A jury would have a right to consider that along with all the other circumstances in the case; and the letter from Mr. Sowards to Mr. Barton might perhaps be regarded as an admission on the part of the company that Barton had authority to speak for the company, for he says, " * * * unless it proves that you by your communications with Mr. Stacy or Mr. Sutton so involved us as to make yourself liable to us for any claim which can be successfully prosecuted."

We hold, further, that if the company in fact denied liability, the agent had authority to communicate that to the insured, and if he did communicate it to the insured, that that would amount to a denial of liability on the part of the company and work a waiver of written notice and proofs of loss. We find no case upon that point, but it seems to us, under the general principle of law of agency, it must be held that such an agent as this has power to communicate that to the insured and the insured has the right to act upon it.

We are of the opinion, further, that under the circumstances disclosed by the record in the case, Mr. Barton would be held, as far as this com-

pany and the insured was concerned, to have the power and authority of a general agent. No notice was given to Stacy of any restriction of authority on the part of the agent. There is no express statement in the policy that he had no authority to receive notice of, and proofs of loss; and where a company, whose headquarters are in a foreign country, across the seas, puts in the hands of an agent policies of insurance, signed and countersigned, and ready for execution and delivery, except filling in the name of the party and a description of the property, and no notice is given that there is any other agent on this hemisphere, we think that he must be held, as a matter of law, and the company estopped from denying his authority to represent the company in all matters necessary to the making of a contract of insurance and pertaining to a loss, in case a loss occurred, and the collection and paying of the insurance money. It is not the law that, under such circumstances as these, a man is obliged, when a loss occurs, to start out and hunt for an agent who would have authority to receive notice or proofs of loss. The agent with whom he contracted for his policy of insurance, to whom he was to pay the premium, and who conferred with him after the fire, was the only agent he knew of that represented this company in this country.

Whatever the rule is as to such a local insurance agent being a general agent of the company, in all matters pertaining to the policy, we think that, under these circumstances, the company is estopped from denying the authority and power of the agent to represent it in matters relating to the loss, and the act of the agent, Barton, was the act of the company, and binds it.

We think that it was error for the court to direct a verdict in favor of the defendant, and for that reason, the judgment of the court of common pleas will be reversed, the verdict set aside, and the case remanded for a new trial.